† INHABITANTS OF PLANTATION No. 9 *versus* BEAN & *al.*

When a plea in abatement is overruled by the presiding Judge, the general issue pleaded, and the cause subsequently reported for the consideration of the whole Court upon the evidence, without any stipulation as to the preliminary plea, it is considered as waived.

When a plantation claims to support an action as a corporation duly organized under the Act in relation to elections, they must show a compliance with the provisions of that Act.

Without a return by the assessors, to the office of the Secretary of State, of certain and definite limits of the plantation, the organization is defective and of no validity.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

TRESPASS *quare clausum*, for logs cut on the public lots in township No. 9, 3d range, in the county of Washington.

On the first day of the term at which the writ was return-able, defendants filed a motion to quash the writ, also a demand for the plaintiffs' appearance, which were overruled.

Being required to plead, the defendants put in the general issue, and a brief statement denying the existence of the plaintiff corporation and their right to bring this suit; and also claimed the right of doing the acts complained of, as the servants of one Prentiss, to whom was conveyed the timber on these lots, in Nov. 1850, by the Land Agent of the State.

By c. 196, of the Acts of 1850, the Land Agent was authorized to sell the timber and grass on all the lands reserved for public uses in townships or tracts unincorporated, or not organized for election purposes.

Under this Act, the Land Agent conveyed the timber cut upon the lots, complained of in this suit, to one Prentiss, by whose authority the defendants acted.

The question raised was, whether the plaintiffs were a legally organized plantation, under c. 89, of Acts of 1840.

One requirement in that Act was, that "the *limits* of all plantations, so organized, shall be described by said assessors, so chosen, and forwarded to the Secretary of State, and by him recorded."

After all the evidence was presented, the cause was taken from the jury, and it was agreed that upon the evidence the full Court should render judgment according to the legal rights of the parties.

The record evidence relied upon appears in the opinion of the Court.

*Thacher*, for defendants, contended that the preliminary proceedings were not regular, but, if so, that the organization was illegal for want of a description of its limits. He also contended that such organization had been abandoned. Nor was the organization of 1844 perfected.

*Fuller*, for plaintiffs, maintained that the parol and record evidence shows an organization *de facto*, claiming to be such, choosing officers and exercising the rights of similar organ-

izations. That this was sufficient, he cited 11 Maine, 227; 12 Maine, 381; 36 Maine, 78; 14 Pick. 442; 7 Met. 592; 2 Cush. 37.

If record evidence alone is essential to prove the organization, the proof is sufficient of its loss to authorize the use of the parol.

Such being the case, the sale of the Land Agent was unauthorized and void, and the defendants are naked trespassers.

RICE, J. — This case has been before the Court on a former occasion, 36 Maine, 359. At the return term the defendants seasonably filed a motion in abatement. This motion was overruled, and, under the direction of the Court, the defendants pleaded the general issue. By pleading the general issue, under the direction of the Court, the defendants waived no rights under their plea in abatement. Subsequently, however, by consent of parties, the case was reported for the consideration of the full Court. In that report, no rights under the plea in abatement were reserved to the defendants; but the case was presented on different grounds. This must be deemed a waiver of the plea in abatement and a consent on the part of the defendants to rely upon the general issue with their brief statement. The existence of plaintiffs, as a corporation, can be questioned only by plea in abatement. By pleading the general issue, the legal existence and competency of the plaintiffs are admitted. *Trustees of Ministerial and School Fund v. Kendrick*, 3 Fairf. 381.

The plaintiffs claim the right to maintain this action as a corporation duly organized, under the provisions of " an Act in relation to elections," passed Oct. 2, 1840.

The defendants justify under a deed from the Land Agent of Maine to Henry E. Prentiss, dated Nov. 28, 1850.

The plaintiffs claim to have organized under the Act above referred to, in the fall of 1840, and to have continued that organization. No record of such organization was produc-

ed, but we think there is satisfactory evidence that such a record once existed, and that it has been lost.

The deposition of Edward S. Dyer shows that there was a meeting of the inhabitants of plantation No. 9, range 3, and of "Lombert's Lake" in No. 11, called by warrant of one or more of the County Commissioners, for the purpose of organizing a plantation for election purposes, under the statute aforesaid, and that such proceedings were had as are contemplated by said Act.

The following notice seems to have been forwarded to the Secretary of State, a copy of which, from the Secretary's office, was put into the case.

"Plantation No. 9, Oct. 24, 1840.

" To the Secretary of State:—The following are the bounds of plantation number nine, as incorporated this day, including township No. 9, in the third range, north of the Bingham purchase, and settlement, at Lombert's Lake, (so called,) on township number eleven, on the river St. Croix.

"Edmund Webber,  ⎱
"Richard Lombert, ⎰ Assessors.
"Aaron Scribner,  ⎰

"Aaron Scribner, Plantation Clerk."

The defendants contend that this certificate is defective as a description of the limits of the plantation, and therefore such a faliure to comply with the provisions of the statute as rendered the whole proceedings nugatory. It was undoubtedly the intention of the Legislature, to require of these anomalous corporations, such a description of their limits as would give them a definite location, as well as a name. Reference to an existing division of territory, which has established and well known boundaries, as have townships which have been surveyed by authority of the State, is as distinct a description as it would be to recite the boundaries of such tract in detail. But where a tract of land or division of territory is referred to by name, which has no established boundaries, the description is, of course, indefinite and uncertain. "Lombert's Lake" settlement, is

described as being *in* township number eleven, *on* the river St. Croix. But *in* what part of that township, or what portion of the area thereof is included in that "settlement," does not appear.

But there are other difficulties to be encountered in maintaining this organization. The plaintiffs have introduced certain papers which they claim to be records, to show their continued existence as a corporation. These records, if admitted for one purpose, which may be supposed to favor the position of the plaintiffs, must be considered for other purposes, for which they afford proof equally satisfactory, though the tendency of such proof be adverse to the plaintiffs. These records show that meetings of the inhabitants of "No. 9 and 11" were called Aug. 25, 1842, March 11, 1843, and Aug. 29, 1843. Warrants also appear to have been issued to warn the inhabitants of "Jackson Brook Plantation," Jan. 10, 1844, and March 19, 1844. There is no record of any meeting of the inhabitants of plantation No. 9.

On the 22d day of June, 1844, the County Commissioners for Washington county, issued their warrant, directing the inhabitants of No. 9, 3d range, qualified to vote for representatives and senators, to meet at the house of Francis Butterfield, in said township, on Saturday the 29th day of June, inst., at 4 o'clock, P. M., to organize themselves into a plantation for the purpose of voting, by the name of "Jackson Brook Plantation." The record shows that a meeting was held pursuant to this warrant, and that the inhabitants of "Jackson Brook Plantation" continued to hold meetings for election purposes, until the year 1851. No description of the limits of "Jackson Brook Plantation," as organized in 1844, appears to have been forwarded to the Secretary of State, as required by the Act of Oct. 2, 1840.

In January, 1851, as appears from the records introduced by the plaintiffs, a warrant was issued by one of the County Commissioners of Washington county, to notify the inhabi-

tants of township No. 9, 3d range, to meet at the house of James L. Dudley in said township, on Friday, the tenth day of January, at ten o'clock, A. M., A. D. 1851, to choose a moderator and clerk, and for the purpose of organizing themselves into a plantation, according to the provisions of an Act passed at the extra session of the Maine Legislature in 1840.

The inhabitants met under this warrant and organized themselves, and duly forwarded a description of the limits of their plantation to the Secretary of State; and since that time this organization appears to have been maintained.

In view of these facts, we are of opinion that the organization of 1840 was defective, inasmuch as the limits of the plantation were not described by the assessors and forwarded to the Secretary of State, as required by the Act of Oct. 2, 1840. We are also satisfied from the records introduced by the plaintiffs, that that organization was not maintained, but was wholly abandoned by the inhabitants. The organization attempted in 1844, was never perfected, no description of its limits ever having been forwarded to the Secretary of State.

The result is, that no legal organization of "plantation No. 9, 3d range," existed prior to 1851. Of the organization in 1851, under which the present assessors appear to have been elected, it is not necessary to express an opinion. By the provisions of c. 196, laws of 1850, the Land Agent was authorized and directed to sell the right to cut and carry away the timber and grass from off the reserved lands which have been located in all the townships and tracts of land unincorporated or not organized for election purposes.

No. 9 being unincorporated, and not having been legally organized for election purposes, and the public lots therein having been located, the timber and grass thereon passed by the deed of the Land Agent to Prentiss, and the defendants, justifying under Prentiss, are protected.

*Plaintiffs nonsuit.*